**DETYENS SHIPYARDS, INC., Appellee,**

v.

**MARINE INDUSTRIES, INC., and the TUG WAL–ROW, Appellants.**

**No. 9853.**

United States Court of Appeals
Fourth Circuit.

Argued May 6, 1965.

Decided July 9, 1965.

Harold A. Mouzon and B. Allston Moore, Jr., Charleston, S. C. (Moore, Mouzon & McGee, Charleston, S. C., on brief), for appellants.

Wm. H. Grimball, Jr., Charleston, S. C. (John C. Conway and Grimball & Cabaniss, Charleston, S. C., on brief), for appellees.

Before BOREMAN and BRYAN, Circuit Judges, and LEWIS, District Judge.

## PER CURIAM.

The foundering of floating Drydock No. 1, owned by Detyens Shipyards, Inc. on February 4, 1962 while at sea two or three miles off the New Jersey shore, bound from Staten Island, New York to Charleston, South Carolina in the tow of tug Wal-Row, was due to the negligence of the tugmaster, the libel of Detyens charged in seeking damages for the loss from the towboat and her owner, Marine Industries, Inc. The libellees' answer denied fault of any kind on the part of the tug and pleaded unseaworthiness of the drydock as the exclusive cause of her sinking. The admiralty judge held the tug solely to blame, decreed liability against the respondents but deferred final judgment for ascertainment of damages. We affirm.

On appeal the tug and her owner recognize that the findings of the trial judge may not be rejected unless clearly erroneous. McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954). However, they maintain that the Court in arriving at its ultimate finding employed an incorrect legal premise, namely, that upon proof of the tow's loss in fair weather, with moderate wind and without a "big" sea, the tug had the burden to overcome a presumption that the loss was imputable to her negligence. The argument is that the tug is not a bailee and her mere failure to redeliver the tow in good condition does not warrant an inference of neglect on the tug's part. That is all true, Stevens v. The White City, 285 U.S. 195, 203, 52 S.Ct. 347, 76 L.Ed. 699 (1932), but we do not think the District Judge adopted the alleged, contrary thesis.

The judge accurately followed Stevens v. The White City, supra, fully comprehending its teaching of the tow's burden to establish negligence independently and beyond the bare proof that she went down. Other circumstances were found by him which, together with the sinking, he thought, made out a case for recovery by the claimants if it were not rebutted. This course of reasoning was altogether correct, both in law and logic. The Anaconda, 164 F.2d 224, 228 (4 Cir. 1947); Simkins v. R. L. Morrison & Sons, 107 F.2d 121, 122 (5 Cir. 1939). With this beginning, the Court concluded that the libellant's proof was in the end preponderant.

Upon conflicting evidence the Court found the drydock seaworthy, and the tugmaster negligent in devising and going to sea with a makeshift rigging of the tow rope instead of returning for repairs to the shipyard just departed, when the towing bitts ("pads" or padeyes) on the drydock were observed to be pulling loose and the tug and tow were still within the harbor. Decision also was posited on the rule of proximate cause—that conceding arguendo the tow unseaworthy, the tug's negligence was the intervening, superseding and immediate cause of the disaster. Curtis Bay Towing Co. v. Southern Lighterage Corp., 200 F.2d 33, 35 (4 Cir. 1952). To recount the testimony or detail the

facts would contribute nothing to maritime jurisprudence. It is enough now to say that the proof justified the fact findings and the District Judge was not mistaken in the law.

Affirmed.